# SUPREME COURT.

## In the Matter of HARRY McGARVEY.

*Habitual drunkard — Debt contracted after inquisition found, but previous to the filing of same — When recoverable — Testimony that part of debt was for drinks without further proof that they were either strong or spirituous liquors or wines will not defeat recovery.*

An inquisition finding a person an habitual drunkard was signed December 18, 1879, but not filed in the county clerk's office until December 7, 1880, when a committee was appointed. Between those dates, the drunkard, who seemed to have capacity for business and attended to some of his affairs, contracted a debt with one who had no knowledge of the pendency of the proceedings:

*Held,* that the debt was recoverable.

Testimony that a party who was not a lodger in an inn, tavern or hotel, had drinks, without further proof that they were either strong or spirituous liquors or wines, will not defeat a claim for said drinks under the provisions of the Revised Statutes (2 *R. S.* [*6th ed.*], 937, § 16).

*Albany Special Term, May,* 1882.

WESTBROOK, J., presiding.

MOTION to confirm report of a referee. The petitioner, who was a creditor of McGarvey, applied for an order to compel his committee to pay the debt. A reference was ordered to pass on the account and to report to the court. It appeared that proceedings had been taken under the statute against McGarvey, which resulted in an inquisition declaring him an habitual drunkard, dated and found December 18, 1879, but not filed until December 7, 1880. Between those days the indebtedness was contracted. The petitioner had no knowledge of the proceedings against the drunkard. Other facts are stated in the referee's report.

*Edward J. Meegan,* for petitioner.

I. The proper practice for a party who has a claim against a lunatic or habitual drunkard after office found, is to apply

to the supreme court, by petition, for the payment of the debt, or for leave to bring suit for its recovery (*Soverhill* agt. *Dickson*, 5 *How. Pr.*, 109; *Brasher* agt. *Van Cortland*, 2 *Johns. Ch.*, 242; *Matter of Heller*, 3 *Paige Ch.*, 199; *Matter of Hopper*, 4 *id.*, 489; *Beach* agt. *Bradley*, 8 *id.*, 146).

II. The inquisition remaining unfiled for nearly a year, presents no bar to our claim, if the drunkard had capacity for business during the time our claim was accruing. (*a*) But for the effect claimed for this inquisition, our right to recover would be clear (*Mut. L. Ins. Co.* agt. *Hunt*, 9 *Weekly Dig.*, 365). (*b*) In the Revised Statutes (3 *R. S.*, [6th ed.], 53, 54), under which *Wadsworth* agt. *Sharpsteen* (8 *N. Y.*, 388) was decided, there was no requirement that the inquisition be filed, still the impression existed that it was the decree on the inquisition that gave the notice to the world, for, says JOHNSON, J., in 12 *Barbour*, 238: "How can a person who is judicially declared a lunatic and in charge of a committee, make a contract." Again: "The inquisition found and the decree thereon is notice to all the world." As to the effect of an inquisition, see *Hart* agt. *Deamer* (6 *Wend.*, 497); *Den* agt. *Clark* (5 *Hals.*, 217; *S. C.*, 18 *Am. Dec.*, 417, *and note*). (*c*) Section 2332 of the Code of Civil Procedure, however, provides "the inquisition must be signed. * * The commission and inquisition must be returned by the commissioners and filed with the clerk." The word "must" in this section should be held to be peremptory, as the interests of third persons are concerned (*Blackwell on Tax Titles* [4th ed.], 706, *Rule* 78). (*d*) In cases where actions or proceedings are held to operate as *lis pendens*, the rule is that they must be prosecuted continuously and with diligence, else those dealing with the subject are not bound (14 *Am. Dec.*, 777, *note*). If the committee is practically abandoned or the committee resign, the lunatic may make contracts (15 *Am. Dec.*, 368). There is certainly a strong case of laches and abandonment in the case at bar. (*e*) A person who had been adjudged insane, but over whom no conservator had been appointed, and who continued in the

management of his business, with nothing in his appearance to indicate his mental unsoundness, purchased goods necessary and useful in his business, at a reasonable price, and executed his note therefor. The seller had no knowledge or notice of his being adjudged or of his being a lunatic. *Held*, that the purchaser was liable on the note, and that payment of a judgment recovered therefor would not be enjoined (*McCormick* agt *Little*, 85 *Ill.*, 62; *S. C.*, 28 *Am. Rep.*, 610).

III. Some of the claim is for necessaries, and that part should be ordered paid for, without reference to the committee, by one not having notice of committee (*Estate of Wing*, 2 *Hun*, 671).

*William P. Rudd*, for committee.

BUCHANAN, CHARLES J., *Referee*. — It having been referred to me to pass upon and adjust the several accounts and demands of Robert Harrison, the petitioner herein, and to determine the amount justly due to him from George Dawson, as committee of the person and estate of Harry McGarvey, named in the petition of said Harrison, herein, I do hereby report herein as follows: "From September 11, 1880, to November 10, 1880, both dates inclusive, Robert Harrison and Edward Van Valkenburgh were partners engaged in the business of buying and selling fish, oysters, clams and edibles, and were conducting a saloon, restaurant and bar at No. 782 Broadway, in the city of Albany, under the firm name and style of Harrison & Van Valkenburgh. Between said September eleventh and November tenth, both inclusive, said Harrison and Van Valkenburgh advanced and loaned money to said Harrry McGarvey at his request, and on like request during said period sold and delivered to him at the city of Albany, certain goods, wares and merchandise, consisting of cigars, tobacco, meat, cheese, drinks, vegetables, oysters, clams, tongues, fish, bread, lobsters and pigs feet, amounting in all on November 10, 1880, to $151.10; no part of which has

been paid, though demand for payment thereof was, before the 23d of September, 1881, made upon both said McGarvey and said Dawson as such committee, and payment was refused. Of said sum of $151.10, sixteen dollars and ten cents were for drinks. There is no evidence before me that said drinks, or any of them were either strong or spirituous liquors or wines, or that said drinks or any of them were alcoholic or intoxicating wines or liquors (2 *R. S.* [*6th ed.*], *p.* 937, *sec.* 16). On December 7, 1880, an order was granted by this court, at a special term thereof, whereby said George Dawson was appointed the committee of the person and estate of the said Henry McGarvey upon his (said Dawson's) filing with the clerk of said court a bond, with two sufficient sureties, to be approved of by a justice of said court, in the penalty of $18,000, and conditioned for the faithful performance of his trust as such committee according to the statute and the rules and practice of the court, said order and the inquisition taken December 18, 1879, attached thereto relative to declaring Harry McGarvey to be an habitual drunkard, were filed in the clerk's office of Albany county, on the 7th day of December, 1880, and not till then. There is no evidence before me that said bond was ever filed as required by said order or otherwise; nor that the commission referred to in said inquisition was ever filed with the clerk or otherwise. Said Van Valkenburgh died July, 1881.

" To the close of November, 1880, said McGarvey had and kept his bonds and mortgages himself. Towards the latter part of September, 1880, said Harrison assisted said McGarvey to make out vouchers for his (said McGarvey's) stock. During the period that the said goods were sold and delivered to said McGarvey as aforesaid, he was in a condition to know what he was about, and to take care of himself.

" As conclusions from the foregoing facts, I find and determine that there is justly due and owing to said Robert Harrison, as surviving partner of the firm of Harrison & Van Valkenburgh, from said George Dawson, as committee of the

estate and person of said Harry McGarvey the sum of $151.10, with interest thereon from November 10, 1880."

The referee's report was confirmed, and an order was entered directing the committee to pay the sum found to be due, with referee's fees and costs.